NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0662n.06

**No. 10-1782**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Oct 28, 2010**
LEONARD GREEN, Clerk

LIVONIA PROPERTIES HOLDINGS, LLC,

    Plaintiff-Appellant,

    v.

12840-12976 FARMINGTON ROAD HOLDINGS, LLC,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

BEFORE: MERRITT, ROGERS, and SUTTON, Circuit Judges.

ROGERS, Circuit Judge. Plaintiff Livonia Properties Holdings, L.L.C. appeals the district court's denial of a request for a preliminary injunction of the foreclosure by advertisement of four properties for which Livonia had defaulted on its mortgage obligations. The district court denied the request for a preliminary injunction after determining that Livonia did not have a strong likelihood of success on the merits, Livonia was not likely to suffer irreparable harm without the injunction, any harm caused to Livonia by refusing to enjoin the foreclosure did not clearly outweigh the harm to others that would be caused by enjoining the foreclosure, and an injunction would not serve the interests of public policy. An evaluation of the preliminary injunction factors shows that the court did not abuse its discretion in denying the injunction.

Livonia owns (or recently owned) four commercial properties in Livonia, Michigan. In December 2004, Livonia used these properties to secure a $16,300,000 commercial mortgage loan with Lehman Brothers Bank, FSB. Lehman Brothers executed an assignment of the loan on or around January 6, 2005, effective January 11, 2005 (the "First Assignment"). The assignment documents show that the loan was transferred from Lehman Brothers to LaSalle Bank National Association as Trustee for the registered holders of LB-UBS Commercial Mortgage Trust 2005-C-1, Commercial Mortgage Pass-Through Certificates, Series 2005-C1 (the "Trust"). The First Assignment was recorded with the Wayne County Register of Deeds on November 17, 2005.

The public record shows only an assignment from Lehman Brothers to the Trust. However, Livonia has provided evidence that the First Assignment was actually accomplished through a series of interim, short-term transfers rather than a direct transfer between the parties. These transfers have been acknowledged by defendant, Farmington Road Holdings, and are as follows:

1.      On or about January 6, 2005, effective January 11, 2005, Lehman Brothers sold the loan to Lehman Brothers Holdings Inc. ("LBHI");

2.      On or about January 31, 2005, LBHI transferred the loan to Structured Asset Securities Corporation II ("SASCII");

3.      On or about February 10, 2005, SASCII deposited the loan into the Trust.

Livonia discovered these interim assignments through an Internet search that revealed a Pooling and Servicing Agreement ("PSA") describing the interim transfers that were used to establish the Trust. Farmington acknowledged at oral argument that the First Assignment was

executed "in blank" (to be completed later) and was later completed to identify the Trust as Lehman Brothers' assignee.

On February 17, 2010, the Trust created the defendant entity, Farmington, for the purpose of foreclosing on the mortgaged properties. The trustee assigned the loan to Farmington on or about March 3, 2010 (the "Second Assignment"). The Second Assignment was recorded with the Wayne County Register of Deeds on March 4, 2010. Farmington then began the process of foreclosure by advertisement, a method of non-judicial foreclosure permitted under Michigan law. Mich. Comp. Laws Ann. § 600.3204. Livonia contested the foreclosure in Michigan state court, and Farmington removed the matter to federal court. The district court extended the state court's grant of a temporary restraining order while considering Livonia's motion for a preliminary injunction.

On appeal, Livonia contends that Farmington is not in compliance with the statute's requirement that a foreclosing mortgagee who is not the original mortgagee must hold record chain of title to the property in question. The basic assertion is that because the interim transfers of January 2005 were never recorded, the record chain of title is defective and Farmington cannot foreclose on the properties by advertisement. The district court correctly determined that Livonia did not have a strong likelihood of success on the merits of its record-chain-of-title claim and dissolved the TRO. Livonia next filed a motion for reconsideration, which the district court denied. Farmington has sold three of the four properties pursuant to the foreclosure by advertisement statute. Livonia now appeals.

As an initial matter, Farmington contends that Livonia's request that the sales that have already occurred be set aside is not properly before this court. Farmington argues that the request was not before the district court on the motion for preliminary injunction, but Farmington does not acknowledge that the TRO barred foreclosure, so there were no sales for the district court to set aside. All of the relevant issues of law required to award either form of relief, an injunction or voiding of the sales, were presented below, and Livonia has not modified those claims on appeal. Livonia is not attempting to introduce a new claim on appeal, but has merely adjusted the form of relief requested to conform to the current circumstances. The request has been properly presented to this court.

Farmington also contends that Livonia's petition is partially moot because three of the four mortgaged properties have already been sold through the foreclosure by advertisement process, but this argument is also without merit. Farmington's sole support of its position is a quote taken out of context from Wright's *Federal Practice and Procedure* treatise, which states that "[i]f the district court has denied an injunction and there has been no stay, defendant is free to take the action sought to be enjoined, and if the event sought to be enjoined transpires before the appeal is heard, the appeal will be dismissed as moot." 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2904. We have found no additional support for this proposition, and Farmington has not argued that we would be unable to provide Livonia any relief in this appeal. *See Coalition for Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 460 (6th Cir. 2004) ("the determinative factor in the mootness

inquiry is whether the court possesses the authority to afford [the party seeking reversal] any effectual relief").

The key issue on appeal is the meaning of "record chain of title" under Michigan's foreclosure by advertisement statute. Mich. Comp. Laws Ann. § 600.3204. The relevant statutory language states: "[i]f the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale . . . evidencing the assignment of the mortgage to the party foreclosing the mortgage." Mich. Comp. Laws Ann. § 600.3204(3). Livonia contends that because the PSA was never recorded and two parties to the PSA are not reflected in the recorded documents, the record-chain-of-title requirement is not satisfied. Livonia's basic assertion is that a Michigan mortgage may only be foreclosed by advertisement if every interim assignment between the original lender and the foreclosing party is revealed by the public record. Livonia's interpretation, however, is not in accordance with the case law.

Livonia offers no definition of the term "record chain of title" and interchanges the phrase with "chain of title" throughout its brief. A search of Michigan case law and property treatises has not revealed a definition of either term, but the phrase is plain on its face and was reasonably defined by the district court in its opinion denying Livonia's motion to reconsider: "record chain of title is comprised of documents that were filed in the County Register of Deeds' office."[1]

---

[1] Farmington's appellate brief refers to an affidavit of Dennis W. Hagerty, a 23-year member of the Land Title Standards Committee of the Real Property Law Section of the State Bar of Michigan in which Mr. Hagerty explains the meaning of the term "record chain of title." Livonia contends that this affidavit is not properly considered by this court because it was not before the district court at the time that court ruled on the preliminary injunction. There is no need to examine

In this case, the recorded documents show a transfer from Lehman Brothers to the Trust and another from the Trust to Farmington. These transfers were found in Livonia's own title search, which Livonia offered as an exhibit in its original brief to the district court. This record shows a clear chain of title from the original mortgagee to Farmington. Although Livonia has not articulated any alternative definition of "record chain of title," its argument clearly rests on the position that the term includes any and all interests in the property ever held by any individual or entity. This position is not supported by the case law.

The most recent Michigan case in which a plaintiff has attempted to challenge a foreclosure by advertisement based on unrecorded assignments is *Arnold v. DMR Financial Services, Inc.*, 532 N.W.2d 852 (Mich. 1995). In that case, DMR, the financial institution foreclosing on the mortgage, had granted a security interest in the mortgage to another entity, which did not record its interest. The foreclosed party argued that the foreclosure was not carried out in accordance with the statute because the security assignment was not within the chain of title. The Michigan Supreme Court disagreed, restating its long-held position that "the presence of an unrecorded security assignment was irrelevant." *Id*. at 856. *Arnold* actually involved a prior version of the foreclosure-by-advertisement statute that said that *all* assignments must be recorded. *Id.* at 855. Even under that stronger language, which is clearly more favorable to Livonia's position than the current requirement

Livonia's claim on this point because the Hagerty affidavit is not necessary to a determination of the meaning of "record chain of title" and was not relied on by this court in determining the meaning of the phrase.

that the foreclosing party have "record chain of title," the Michigan Supreme Court was clear that the lack of recordation did not invalidate the foreclosure.

One point of distinction between *Arnold* and the present matter is that the foreclosing party in *Arnold* had assigned only a security interest in the mortgage rather than all of its rights. In contrast, the mortgage between Livonia and Lehman Brothers appears to have passed in its entirety through two entities associated with the PSA before being titled to the Trust. However, this distinction does not undermine *Arnold*'s relevance to the case at hand. The *Arnold* court emphasized that unrecorded interests "did not create a valid objection on behalf of the mortgagor if the mortgagor was unaffected by those interests." 532 N.W.2d at 856. Livonia has not argued that the intermediate transfers related to the PSA have in any way affected Livonia's rights or responsibilities related to the mortgage. In fact, it appears that the only interests impaired by the lack of recordation were those of LBHI and SASCII during the brief time those entities held the loan. Had either attempted to foreclose, Livonia would have had a valid record-chain-of-title objection.

The district court opinion emphasizes that Farmington at least substantially complied with the statutory requirements for record chain of title and that substantial compliance is all that is required under the statute. *Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, No. 10-11589, 2010 WL 1956867, at *16-18 (E.D. Mich. May 13, 2010). Livonia argues that the district court misinterpreted the law because the statute actually requires strict compliance. The case law supports the district court's position that substantial compliance is sufficient. *Peterson v. Jacobs*, 6 N.W.2d 533, 536 (Mich. 1932). However, the issue does not require further discussion

because Farmington appears to be in full compliance with the statute. Both Farmington and Livonia have produced documents revealing that the public records show the mortgage passing from Lehman Brothers to the Trust to Farmington, and the plain language of the statute appears to require nothing more.

Livonia also asserts that Farmington must prove that the assignment between Lehman Brothers and the Trust is legally valid in order for Farmington's chain of title to be valid. Livonia contends that the assignment from Lehman Brothers to the Trust may be invalid because the Trust did not actually exist as of January 6, 2005, the date entered on the transfer instrument. Livonia bases this claim on the PSA, which created the Trust but was not executed until February 8, 2005. The argument, as articulated on appeal, is that the Trust could not have actually received the mortgage on January 6, 2005, and as a result, the assignment was invalid, making the record chain of title invalid. As a preliminary matter, Livonia has presented no authority for the proposition that the record chain of title is destroyed by an irregularity affecting the validity of a transfer. Even if the transfer were invalidated, the public record would remain as it is, and the record chain of title would not be disturbed.

Regardless of this point, even if there were a flaw in the assignment, Livonia does not have standing to raise that flaw to challenge Farmington's chain of title. As recognized by the district court, there is ample authority to support the proposition that "a litigant who is not a party to an assignment lacks standing to challenge that assignment." 2010 WL 1956867, at *9. An obligor "may assert as a defense any matter which renders the assignment absolutely invalid or ineffective,

or void." 6A C.J.S. *Assignments* § 132 (2010). These defenses include nonassignability of the instrument, assignee's lack of title, and a prior revocation of the assignment, none of which are available in the current matter. *Id.* Obligors have standing to raise these claims because they cannot otherwise protect themselves from having to pay the same debt twice. *Id.* In this case, Livonia is not at risk of paying the debt twice, because Farmington has established that it holds the original note. Farmington has produced ample documentation that it was in possession of the note and had been assigned all rights therein prior to the initiation of foreclosure proceedings. The district court reviewed the copies in exhibits and the originals produced by Farmington and was satisfied that they were authentic. Without a genuine claim that Farmington is not the rightful owner of the loan and that Livonia might therefore be subject to double liability on its debt, Livonia cannot credibly claim to have standing to challenge the First Assignment.

Michigan case law provides further support for the district court's conclusion that Livonia lacks standing to challenge the assignment. In *Bowles v. Oakman*, 225 N.W. 613 (Mich. 1929), the Michigan Supreme Court held that the maker of a promissory note could not challenge his obligations under the note by asserting that an invalid assignment had occurred. *Id.* at 614. The court emphasized that the challenge to the transfer was inappropriate where the maker "had no defense of his own to the note." *Id.* The *Bowles* decision then quotes *Gamel v. Hynds*, 125 P. 1115 (Okla. 1912), for the point that "the maker cannot defend or set up matters of defense which only exist between the indorser and indorsee." 225 N.W. at 614. More recently, the Michigan Court of Appeals determined that a lessee of property did not have standing to challenge the lessor's

assignment of certain rights in the lease to a subsequent purchaser because "the parties to the assignment . . . [did] not contest its validity." *Pashak v. Interstate Highway Constr.*, No. 189886, 1998 WL 2001203, at *1 (Mich. App. Mar. 20, 1998). In the instant case, if the assignment were in fact irregular, that would be an issue between the assignor and assignee, not between Livonia and Farmington.

Livonia has attempted to distinguish itself from the unsuccessful obligors described above by emphasizing that its challenge of the First Assignment is not meant to "challenge the underlying obligation," but rather to challenge the record chain of title. That is, Livonia contends that a defective assignment corrupts the record chain of title and that Livonia's challenge is only of Farmington's standing to foreclose under the statute. Livonia's brief cites several cases in which obligors have raised chain of title challenges (often unsuccessfully) for the proposition that Livonia has standing to assert this claim. Livonia further argues that because the statute requires the foreclosing party to hold record chain of title, a debtor must be able to challenge the record chain of title as a means of avoiding foreclosure. Livonia is correct that a party subject to foreclosure has standing to challenge whether a lender holds record chain of title, but that determination is limited to an examination of the public records. In its opinion on Livonia's motion to reconsider, the district court clarified this difference, pointing out that Livonia "acknowledges that a *record chain of title* exists" but is "unsatisfied with the *record chain of title*." 2010 WL 1956867, at *18. Because Livonia finds no claim in the public records, it is seeking to "go beyond the statutory requirements to inspect each and every aspect of every contract or agreement" in the history of the loan. *Id.* at *16.

- 10 -

As noted by the district court, even if Livonia did have standing to contest the First Assignment and the assignment were in fact invalid, Livonia would still be unlikely to succeed on the merits. 2010 WL 1956867, at *10. Any claim by Livonia that Farmington or the Trust before it was not a valid assignee of the mortgage rings hollow, as Livonia made mortgage payments directly to the Trust for years without questioning the Trust's right to receive payment. Further, when Livonia first encountered difficulties in repayment, it entered into a prenegotiation agreement with the Trust. Standing alone, the existence of that agreement makes Livonia's current questioning of the mortgage's ownership or assignments appear disingenuous, but the agreement's specific terms further weaken the claim. In the agreement, Livonia expressly acknowledged that "[t]he Loan Documents are in full force and effect and are binding on the Borrower in accordance with their terms." R.16-19 at 3. Even if Livonia had standing, therefore, Farmington would likely have valid equitable defenses of estoppel and laches based on Livonia's prior actions.

Livonia also alleges that the district court relied on a clearly erroneous finding of fact in denying the injunction. Livonia places great emphasis on the fact that the original district court opinion identified SASC as a party to the PSA, 2010 WL 1956867, at *1, when the actual party was in fact SASCII, a separate entity. Livonia "submits that this error by the District Court warrants reversal of its denial of [Livonia's] request for a Preliminary Injunction because there is no evidence that exists that demonstrates the actual chain of title." But, as already discussed, there is evidence of the record chain of title, some of which Livonia itself provided in the form of the title report. The

district court properly relied on this evidence in considering Livonia's likelihood of success on the merits.

Livonia does not assert, and there is no evidence in the district court opinion, that the court relied in any way on the identity of SASC or SASCII in its decision to deny the injunction. Livonia brought the error to the district court's attention in its motion for reconsideration, and the district court acknowledged and disposed of the point in its opinion on that motion. The district court restated its position that Livonia lacked standing to challenge the interim transfers, recorded or unrecorded, regardless of what entities were involved. The district court's interpretation of the statute supports the conclusion that the court did not rely on the identities of specific interim parties in determining that an injunction was unwarranted. The district court correctly rejected all of Livonia's claims regarding "record chain of title," and properly concluded that Livonia had little likelihood of success on the merits.

Further, the district court's weighing of the other three preliminary injunction factors did not constitute an abuse of discretion. Livonia has limited its specific assertions on appeal to claims related to its likelihood of success on the merits and has not alleged any error in the district court's analysis of the other three factors. Review of the opinion reveals no such error, much less the clear error required to find an abuse of discretion.

The district court found that Livonia was unlikely to suffer irreparable harm as a result of the denial of the preliminary injunction. It specifically identified two bases for its conclusion, neither of which is clearly erroneous. First, it concluded that the alleged harms Livonia would suffer from

foreclosure were the direct result of Livonia's default on the loan and emphasized that self-inflicted harm is not the type that injunctions are meant to prevent. 2010 WL 1956867, at *12 (citing 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1). Second, the court noted Michigan's statutory right of redemption, which allows a borrower subject to foreclosure to satisfy the debt and reclaim the property for six months after the sale. Because Livonia would still have the redemption right, any harm it might suffer from foreclosure was not irreparable. 2010 WL 1956867, at *13.

With regard to whether an injunction would cause harm to others, the district court determined that Livonia had not shown that any harm it would suffer if the injunction were denied would decidedly outweigh any harm that granting the injunction would cause to Farmington. *Id*. The district court did not put substantial weight on this factor because the court considered the first and second factors to be "critical" in the injunction determination and had found that both factors pointed against granting an injunction. Livonia has not referred to any evidence of harm that the district court failed to consider, and there is no clear error in its conclusion regarding the relative harms or its weighing of this factor.

The district court concluded that the public policy factor weighed against granting an injunction because Livonia had contractually agreed to foreclosure by advertisement in the event of default. *Id.* The court's conclusion that public policy does not favor allowing a borrower to avoid its contractual obligations, particularly "where it cannot satisfy the other [preliminary injunction]

factors," *id.* at \*13, did not rely on any erroneous findings of fact or misapplication of law and does not constitute an abuse of discretion.

We therefore affirm the district court's order denying a preliminary injunction.