NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0255n.06

No. 12-1684

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Mar 12, 2013*

DEBORAH S. HUNT, Clerk

CHARLIE SMITH, JR.,

    Plaintiff-Appellant,

        v.

LITTON LOAN SERVICING, LP, a foreign corporation; and DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee under the Pooling and Servicing Agreement Dated April 1, 2006, Fremont Home Loan Trust 2006-2, Asset-Backed Certificates, Series 2006-2,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

BEFORE: KEITH, COLE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. In 2010, Deutsche Bank National Trust Company foreclosed on the house of a Charlie Smith in Romulus, Michigan. Charlie Smith, Jr. filed this action against Deutsche Bank Trust and its loan servicer, Litton Loan Servicing, to contest the foreclosure under a variety of theories. The district court properly concluded that none of Smith's theories justifies setting aside the foreclosure and that Smith's unjust enrichment claim fails.

Plaintiff Charlie Smith, Jr. claims an interest in real property located at 39079 Buckingham in Romulus, Michigan. In 2005, Charlie Smith, Sr. mortgaged this property as security for a $200,000 adjustable rate note. The exact relationship between Charlie Smith, Jr., Charlie Smith, Sr.,

and the property is unclear. The record suggests that Charlie Smith, Sr. and Charlie Smith, Jr. are different individuals, but the parties and the district court conflate the two by saying that the plaintiff, Charlie Smith, Jr., mortgaged the property, despite the mortgage's indication that Charlie Smith, Sr. was the mortgagor. Construing the facts in the light most favorable to the plaintiff, this court assumes for purposes of this opinion that Charlie Smith, Jr. is the same person as Charlie Smith, Sr. so as to provide the relevant Smith with the maximum potential interest in the property that Michigan law may provide him.

In late 2009 and early 2010, Smith failed to make his scheduled payments. In February 2010, Smith hired Bloomfield Financial Services in an attempt to keep the property. Bloomfield believed that the best strategy was to pursue a "short payoff" in which the lender discounts the original balance and the borrower refinances or pays off the discounted amount. *See* Litton's Mot. for Summ. J., Ex. F Pack Depo., 14–16. Kendra Pack, an employee of Bloomfield Financial Services, distinguished between a "short payoff" and a "loan modification." *Id.* The lender's servicer, defendant Litton Loan Servicing, was amenable to a short payoff, but the sticking point was a second lien on the property for approximately $14,000. Litton required that the second lien holder accept only $3000, but the second lien holder would only agree to accept the full balance. Because no agreement could be reached, the short payoff did not occur.

Defendant Deutsche Bank National Trust Company initiated the foreclosure process, *see* Mich. Comp. Laws § 600.3201–.3285, by informing Smith of his § 3205a right to mediation. This was done by posting notices at the property pursuant to § 3205a(3) and publishing notices in a

newspaper pursuant to § 3205a(4) in March 2010.  Smith did not make use of this right to mediation.  In April 2010, Deutsche Bank Trust began foreclosure proceedings by publishing notices of intent to foreclose and posting notice pursuant to § 3208.  Deutsche Bank Trust purchased the property at a May 12, 2010 sheriff's sale for $85,000.

Smith did not redeem his property during the six-month statutory redemption period, *see* Mich. Comp. Laws § 600.3240(8), which expired on November 12, 2010.  On October 19, 2010, Smith filed the present suit in Wayne County Circuit Court.  Litton Loan Servicing removed the case to the U.S. District Court for the Eastern District of Michigan based upon diversity jurisdiction.  Following discovery, Litton and Deutsche Bank Trust moved for summary judgment.  On February 28, 2012, the district court granted summary judgment and issued an opinion and order.  *See Smith v. Litton Loan Servicing, LP*, No. 10-14700, 2012 WL 642060 (E.D. Mich. Feb. 28, 2012).

Although Smith raised a number of claims below, we address only those arguments presented in Smith's appellate brief.

Smith argues that he has standing to set aside the sheriff's sale.  The "standing" that Smith refers to is not standing in the Article III sense, but rather a Michigan state-law requirement that is functionally similar to a statute of limitations.  The district court held that Smith lacked standing because the statutory redemption period had expired and none of his arguments constituted sufficient irregularities in the foreclosure proceeding to justify tolling the redemption period.  We need not rely on Michigan's standing requirement because the district court correctly concluded that neither

irregularity alleged by Smith warranted tolling of the redemption period. Therefore, Smith's interest in the property was extinguished by the sheriff's sale.

Smith alleges two irregularities in the foreclosure process. First, he argues that Michigan Compiled Laws §§ 600.3205a–.3205c required: (1) a ninety-day extension of the foreclosure date, (2) a determination of whether Smith was eligible for a loan modification, and (3) Smith's receipt of a letter with the required calculations explaining why modification was denied. Regarding the ninety-day extension, as the right-to-mediation notice that Smith received explained, to receive the extension, Smith had to contact Deutsche Bank Trust's designate, Orlans Associates, within fourteen days. *See* Mich. Comp. Laws § 600.3205a(1)(e). Smith has not put forth any evidence that he contacted Orlans within fourteen days. Regarding his eligibility for a loan modification, as the district court recognized, Smith has not indicated that he requested a loan modification by contacting a housing counselor within fourteen days as required by § 3205b(1). The loan-modification process hinges on the initial contact with a housing counselor because the lender receives the documents that would allow it to calculate the borrower's eligibility after the counselor informs the lender that the borrower wishes to modify his loan. *See* §§ 3205b–3205c. The only case that Smith cites in support of his § 3205c argument, *Roller v. Federal National Mortgage Association*, No. 12-CV-11236, 2012 WL 5828625 (E.D. Mich. June 4, 2012), is easily distinguishable because Roller contacted a housing counselor, *see id.* at *1, while Smith did not. Nor does Smith's attempt to pursue a short payoff qualify as a loan modification request, for the two strategies are distinct. Because Smith failed to

avail himself of his rights under §§ 3205a–3205c, he has not shown any irregularity flowing from the loan-modification provisions.

Second, Smith argues that Deutsche Bank Trust never received ownership of the mortgage because the assignment of the mortgage to the Trust violated the terms of the Trust's Pooling and Service Agreement. Smith's argument is that the mortgage entered the Trust after the Pooling and Service Agreement's defined "closing date" of the Trust, and therefore, the assignment of the mortgage was invalid. However, Smith was neither a party nor a third-party beneficiary to the Pooling and Service Agreement, so even if its terms were violated, Smith may not challenge compliance with the Pooling and Service Agreement. This court directly addressed a similar issue in *Livonia Properties Holdings, LLC v. 12840–12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 102–03 (6th Cir. 2010). *Livonia* involved a multi-step transfer from the mortgagee to a trust to the foreclosing entity, Farmington Road Holdings. Livonia argued that because the trust was not created until after the date that was entered on the transfer document between the mortgagee and the trust, that this assignment was invalid and therefore, so was the foreclosure. We rejected this argument because a valid "record chain of title," Mich. Comp. Laws § 600.3204, existed. While a plaintiff in a foreclosure case can challenge the existence of a record chain of title, the record chain of title is distinct from the validity of each underlying agreement in the chain of title. *See Livonia*, 399 F. App'x at 100–03.

In *Livonia* we recognized that an obligor may assert defenses which render an assignment void. *See id.* at 102 (citing 6A C.J.S. *Assignments* § 132 (2010)). However, Smith has not shown

that the assignment to the Trust was void rather than voidable. There is no dispute that the Trust existed at the time of the assignment. If the Trust violated the terms of the Pooling and Service Agreement by accepting the mortgage, the beneficiaries of the Trust might have a cause of action, but this would make the assignment merely voidable. Further, as explained in *Livonia*, the purpose of an obligor's defenses is to avoid the risk of paying the same debt twice. While the record in this case is not as clear as in *Livonia* that the foreclosing entity owns the note, there is no evidence that another party owns the note, so Smith has not put forth any evidence showing a genuine risk of having to pay the same debt twice. Smith may not challenge Deutsche Bank Trust's compliance with the terms of the Pooling and Service Agreement.

Because neither of Smith's alleged irregularities in the foreclosure proceeding justifies tolling the redemption period, Smith's right to the property was extinguished by the sheriff's sale.

Smith also argues that the district court should have granted his common-law claim for unjust enrichment. The district court properly rejected this claim. Michigan allows a claim for unjust enrichment when a plaintiff establishes "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904 (Mich. Ct. App. 2006). Smith argues that Deutsche Bank Trust received the benefit of title to the property and the ability to sue Smith for the deficiency between the sale price and the outstanding balance of the note. Smith says that the inequity is obvious because Smith may be forced to move from the property.

Smith has not shown any inequity. Smith may have lost his property and may be forced to go through the hardship of moving, but he received a $200,000 loan and then failed to make his promised payments under the note. There is nothing inequitable about a bank's decision to exercise a standard, statutory foreclosure remedy when a borrower stops making payments on a loan secured by a mortgage. Economic stress can produce lamentable situations, but these situations are anticipated by mortgage agreements and are not the sort of inequity that unjust enrichment is meant to address.

For the foregoing reasons, the judgment of the district court is affirmed.