NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0409n.06

No. 16-2199

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JGMM REALTY, LLC, | ) | **FILED** |
| | ) | Jul 14, 2017 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| LNR PARTNERS, LLC and LBCMT 2007-C3 EAST | ) | COURT FOR THE EASTERN |
| EIGHT MILE ROAD, LLC, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: KEITH, BATCHELDER, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant LBCMT 2007-C3 East Eight Mile Road, LLC ("LBCMT") foreclosed on plaintiff JGMM Realty, LLC's ("JGMM") commercial property located at 17755 Eight Mile Road in Eastpointe, Michigan. Pointing to an alleged defect in an assignment, plaintiff brought the instant action to prevent the foreclosure sale and to secure an accounting and declaratory judgment in its favor. The district court denied plaintiff injunctive relief, and then, after the property was sold, granted defendants' motion to dismiss or for summary judgment and denied plaintiff leave to amend its complaint for a second time. Plaintiff appeals; we affirm.

I.

On June 8, 2007, JGMM borrowed $6,103,000 from nonparty Lehman Brothers Bank, FSB ("Lehman Brothers"). The resulting two promissory notes, Note A and Note B, were

secured by a mortgage on a commercial property. In a chain of assignments over several years, the mortgage and Note A passed from Lehman Brothers to LaSalle National Bank, to U.S. Bank, and then to defendant LBCMT.[1] Defendant LNR Partners, LLC ("LNR") is the special servicer for the Note A loan.

The first assignment is at issue. Although Lehman Brothers was identified as the assignor in the signature block, and as the signatory on the execution page, the body of the assignment identified Lehman Brothers Holdings Inc. ("Lehman Brothers Holdings") as the assignor. To correct this drafter's error, Aurora Commercial Corp., successor by merger to Lehman Brothers, recorded a subsequent assignment effective July 27, 2007, transferring title to Bank of America, N.A., successor by merger to LaSalle. When Bank of America then transferred title to U.S. Bank, the body of that assignment referenced the corrective assignment.

The loans matured on June 11, 2014, but JGMM did not pay off either by that date. Accordingly, LBCMT sent JGMM notice of default letters in July 2014 and January 2016. In February 2016, LBCMT began the process of foreclosure by advertisement, a method of non-judicial foreclosure permitted under Mich. Comp. Laws § 600.3201 *et seq*. Plaintiff filed a complaint against defendant LNR in Michigan state court on February 1, 2016. Plaintiff claimed it was entitled to an accounting because it believed LNR was misappropriating funds. Plaintiff also alleged various defects in the mortgage and note assignments and requested declaratory judgment in its favor. LNR timely removed, invoking diversity jurisdiction.

Upon removal, JGMM filed an amended complaint adding LBCMT as a party and a request to enjoin the foreclosure sale. Plaintiff also filed a motion for a preliminary injunction.

---

[1]Plaintiff does not appear to challenge the assignment of Note B. The allonges attached to the amended complaint reflect that Aurora Bank FSB (formerly known as Lehman Brothers) assigned it to Dawn Grantor Trust on April 27, 2012. Dawn Grantor Trust in turn assigned Note B to nonparty Dawn REO, LLC on March 23, 2016.

The district court held a hearing on the motion at which defense counsel gave plaintiff's counsel a document that plaintiff's counsel described as "an outline sketch of an accounting" that supports "the numbers that [defendants] put forward in their foreclosure notice[.]" The district court denied plaintiff's motion. But plaintiff did not seek an interlocutory appeal of that decision, and LBCMT bought the property at a foreclosure sale on May 27, 2016. Plaintiff had six months to redeem the property, but does not claim to have done so. *See* Mich. Comp. Laws § 600.3240(7).

After the sale, defendants filed a motion to dismiss or for summary judgment. Plaintiff opposed and filed for leave to amend its complaint for a second time. At the motion hearing, defense counsel offered the original notes and other documents for inspection. Plaintiff maintained an accounting was still necessary because "[i]n order for [plaintiff] to payoff, notwithstanding the foreclosure, [plaintiff] need[s] to know what's owed." The district court dismissed plaintiff's claims and denied plaintiff's motion for leave to amend as futile. Plaintiff timely appeals.

II.

Plaintiff argues LBCMT cannot enforce the notes or mortgage because the record chain of title is deficient. Specifically, plaintiff maintains Lehman Brothers never assigned the mortgage or Note A to Lehman Brothers Holdings; therefore, all subsequent assignments by Lehman Brothers Holdings were defective. As a result, plaintiff argues LBCMT never acquired title, and plaintiff is now exposed to double or possibly multiple liability from other entities that may seek to collect the debt. Plaintiff asserts the district court therefore erred in denying plaintiff a preliminary injunction enjoining the foreclosure sale and dismissing its amended

complaint without granting plaintiff leave to amend for a second time. We address each decision in turn.

A.

The district court declined to enjoin the foreclosure sale. Plaintiff did not seek an interlocutory appeal of that decision, and LBCMT purchased the property on May 27, 2016. Plaintiff does not claim it redeemed the property, or made any effort to do so. Now, over a year after the event plaintiff sought to enjoin has occurred, plaintiff argues on appeal that the district court should have prevented the sale. But "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held[,]" *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), and we lack the power to turn back the clock and stop the sale. Accordingly, this aspect of plaintiff's appeal is moot. *See Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."); *see also Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986) ("Mootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief.").

B.

Although we cannot prevent a sale that has already occurred, plaintiff's remaining issues are alive. After the property was sold, the district court granted defendants' motion to dismiss or for summary judgment, and denied plaintiff leave to amend its complaint for a second time. We review de novo a district court's order dismissing a claim under Federal Rule of Civil Procedure 12(b)(6), accepting all well-pled allegations as true and determining whether they plausibly state a claim for relief. *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 457 (6th Cir. 2013). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and "[w]e need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference[.]" *Handy–Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citation and internal quotation marks omitted).

The district court's grant of summary judgment is also reviewed de novo. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). "Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Burley v. Gagacki*, 729 F.3d 610, 618 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). And "we may affirm on any grounds supported by the record even if different from the reasons of the district court." *Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007) (citation and internal quotation marks omitted).

1.

The crux of plaintiff's appeal concerns Count II, its claim for declaratory judgment, and hinges on the effect of a drafting error. Michigan's foreclosure-by-advertisement statute requires that the party foreclosing be "either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage." Mich. Comp. Laws § 600.3204(1)(d). Moreover, where the foreclosing party is not the original mortgagee, "a record chain of title shall exist prior to the date of sale . . . evidencing the assignment of the mortgage to the party foreclosing the mortgage." Mich. Comp. Laws § 600.3204(3). Thus, "a mortgagee cannot validly foreclose a mortgage by advertisement before the mortgage and all assignments of that mortgage are duly recorded." *Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329, 332 (Mich. 2012).

Plaintiff alleged various defects in the assignments in its amended complaint. The district court dismissed this claim because it found that plaintiff did not have standing[2] under Michigan law to challenge assignments to which it was not a party. In response to plaintiff's assertion that it could be subject to double liability because of the defective record chain of title, the district court observed that none of the parties to the assignments in question were disputing their validity. Alternatively, the district court concluded that LBCMT was entitled to judgment as a matter of law on this claim because it had presented ample documentation that it had been properly assigned an interest in the relevant loan documents.

The district court did not reversibly err. On appeal, plaintiff argues it has standing because Lehman Brothers Holdings was never assigned title from Lehman Brothers, thus Lehman Brothers Holdings' purported assignment of the mortgage and notes to another entity has subjected plaintiff to double or even multiple liability exposure, possibly from the Lehman Brothers bankruptcy estate or the purchaser of certain Lehman Brothers assets. Generally, a stranger to an assignment lacks standing to challenge its validity. *See Bowles v. Oakman*, 225 N.W. 613, 614 (Mich. 1929); *see also* 6A C.J.S. *Assignments* § 133. We have explained, however, that a third party may assert defenses which render the assignment void. *Conlin v. Mortg. Elec. Registration Sys.*, 714 F.3d 355, 361 (6th Cir. 2013) (citing *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010)). Such defenses include "nonassignability of the instrument, assignee's lack of title, and a prior revocation of the assignment[.]" *Livonia*, 399 F. App'x at 102 (citing 6A C.J.S. *Assignments* § 132 (2010)). "Obligors have standing to raise these claims because they cannot

---

[2]Here, "standing" refers to "a common-law analogue of statutory standing" that is "a creature of state contract law and is assessed in conjunction with the merits of the claim, not as a threshold issue." *Facione v. CHL Mortg. Trust 2006-J1*, 628 F. App'x 919, 920 (6th Cir. 2015) (quoting *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 254 (6th Cir. 2014)).

otherwise protect themselves from having to pay the same debt twice." *Id.*; *see also DAGS II, LLC v. Huntington Nat'l Bank*, 616 F. App'x 830, 836 (6th Cir. 2015).

Here, plaintiff contends that LBCMT does not have title because the original assignor, Lehman Brothers, never successfully assigned the mortgage or notes to another entity. The documents attached to plaintiff's amended complaint belie this claim. The first assignment transferred the mortgage to LaSalle. Although the document identifies Lehman Brothers Bank as the assignor in the signature block, as the signatory on the execution page, and as the mortgagor in the attached description of the mortgage being assigned, it identifies Lehman Brothers Holdings Inc. as the assignor in the body of the document. Plaintiff seizes on this discrepancy and argues a defect in the record chain of title exists because Lehman Brothers never assigned anything to Lehman Brothers Holdings, and therefore the latter could not assign the mortgage to any other entity.

However, an assignment recorded on February 10, 2015, but made effective prior to the recording of the first assignment, evidences the transfer of the mortgage from Aurora to Bank of America. As the document states, Aurora was, at that time, the successor by merger to an entity formerly known as Lehman Brothers, while Bank of America was the successor by merger to LaSalle. On its face, this assignment transfers the mortgage from the original mortgagee to the first assignee, removing any trace of Lehman Brothers Holdings from the chain.

Defendants assert this assignment was intended to correct the drafting error of the first. This assertion is supported by the fact that the next assignment transferring the mortgage from Bank of America to U.S. Bank references the corrective assignment. As U.S. Bank then assigned the mortgage to LBCMT, the chain of assignments from Lehman Brothers to defendant is clear. And as for Note A, the allonges show an assignment from Lehman Brothers to LaSalle,

from Bank of America (as successor by merger to LaSalle) to U.S. Bank, and from U.S. Bank to LBCMT. Plaintiff does not argue that the allonges did not constitute valid endorsements under Mich. Comp. Laws § 440.3204(1).

Plaintiff, who acknowledges the corrective assignment only in its reply brief, offers no reason to doubt its authenticity or defendants' assertions regarding the assignments. Nor does plaintiff point to any requirement under Michigan law that a corrective assignment must be accomplished in a specific manner to be effective. In sum, we cannot conclude that the corrective assignment and the allonges do anything other than what they state. As we have explained, "a plaintiff in a foreclosure case can challenge the existence of a record chain of title, [but] the record chain of title is distinct from the validity of each underlying agreement in the chain of title." *Smith v. Litton Loan Servicing, LP*, 517 F. App'x 395, 397–98 (6th Cir. 2013).

Without a plausible claim of a defect in the record chain of title, plaintiff has no basis for asserting that it could be subject to double liability. *See Livonia*, 399 F. App'x at 102 ("Without a genuine claim that [defendant] is not the rightful owner of the loan and that [plaintiff] might therefore be subject to double liability on its debt, [plaintiff] cannot credibly claim to have standing to challenge the First Assignment."). Plaintiff has not alleged that, at any time since it defaulted in 2014, an entity other than LBCMT has attempted to foreclose the property or collect on the debt. Nor has any party to the assignments in question challenged their validity; indeed, they have honored the terms. *See Long v. City of Monroe*, 251 N.W. 582, 587 (Mich. 1933). Moreover, defendants possess the original notes and allonges. In sum, simply raising the "specter of double liability," present in all challenges to an assignment's validity, is insufficient to "nudge" such a claim "'across the line from conceivable to plausible.'" *Facione*, 628 F. App'x at 922 (quoting *Twombly*, 550 U.S. at 570).

To the extent plaintiff argues the foreclosure sale should be set aside, the Michigan Supreme Court has made clear that failure to comply with Michigan's foreclosure-by-advertisement statute renders flawed foreclosures voidable, not void *ab initio*.[3]   *Kim*, 825 N.W.2d at 337.   Michigan's foreclosure-by-advertisement scheme is intended to "impose order on the foreclosure process while still giving security and finality to purchasers of foreclosed properties."   *Conlin*, 714 F.3d at 359.   Therefore, "the ability for a court to set aside a sheriff's sale has been drastically circumscribed."   *Id.*   We have explained that "[p]ost-*Kim*, Michigan mortgagors seeking to set aside a sheriff's sale under § 600.3204 will have to demonstrate prejudice (e.g., double liability)[.]"   *Id.* at 362 (citation omitted).   But, as explained above, plaintiff has not demonstrated a risk of double liability, nor that it would have been in any better position to keep the property absent the alleged defect.   *See Kim*, 825 N.W.2d at 337 ("To demonstrate such prejudice, [plaintiffs] must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute.").   Plaintiff has thus not shown it suffered any discernible prejudice,[4] and the district court's dismissal of Count II was not reversible error.

As for plaintiff's accounting claim (Count I), plaintiff does not develop any argument on appeal that it is entitled to such extraordinary relief.   *See Bradshaw v. Thompson*, 454 F.2d 75,

---

[3]"Void *ab initio*" means "null from the beginning, as from the first moment when a contract is entered into," whereas "voidable" means "valid until annulled; especially, (of a contract) capable of being affirmed or rejected at the option of one of the parties."   *Kim*, 825 N.W.2d at 330 n.2 (alterations and internal citations omitted).

[4]Moreover, there is no dispute here that the six-month statutory redemption period has long since run, *see* Mich. Comp. Laws § 600.3240(7), and plaintiff does not assert the property was redeemed.   A foreclosure sale can be set aside after the statutory redemption period lapses only where the mortgagor has made "a clear showing of fraud, or irregularity."   *Conlin*, 714 F.3d at 359 (quoting *Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969)).   Plaintiff does not meet this high standard.

79 (6th Cir. 1972) (characterizing an accounting as an "extraordinary remedy"); *see also Macey v. Archdiocese of Detroit Priests' Pension Plan, Inc.*, No. 318617, 2015 WL 1214589, at *3 (Mich. Ct. App. Mar. 17, 2015) (same). Plaintiff does not point to any statutory or contractual language obligating defendants to provide an accounting, nor does plaintiff address why the accounting it received from defense counsel is insufficient. Moreover, plaintiff does not explain why it cannot glean any relevant information from the loan documents or the foreclosure notice. Plaintiff thus gives us no reason to disturb the district court's dismissal of this claim, and, accordingly, we deem this claim abandoned. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (issues not fully developed and argued are waived on appeal).

2.

Finally, plaintiff challenges the district court's denial of leave to amend its complaint for a second time. Where, as here, the district court denied plaintiff's motion to amend on the basis of futility, we apply de novo review. *Williams v. City of Cleveland*, 771 F.3d 945, 949 (6th Cir. 2014). An amendment is futile if it would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). "[T]he dispositive question . . . is whether plaintiff['s] proposed . . . amended complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Williams*, 771 F.3d at 949 (citation and internal quotation marks omitted).

Plaintiff challenges the district court's ruling only with respect to its claim of double liability, arguing that it "assert[ed] facts that would render all assignments from [Lehman Brothers Holdings] absolutely invalid or ineffective." But plaintiff does not specify to which new facts it refers, and instead reverts yet again to its default position that "there was no negotiation or assignment from [Lehman Brothers] to [Lehman Brothers Holdings]." A review

of the proposed second amended complaint reveals only the addition of factual allegations regarding the Lehman Brothers bankruptcy and a pooling and service agreement. As explained above, the record indicates there were no assignments from Lehman Brothers Holdings, only Lehman Brothers, and thus plaintiff cannot establish any plausible risk of double liability. As plaintiff gives no other reason to disturb the district court's determination, we decline to do so.

Finally, we note the proposed second amended complaint alleges that, besides defendant LBCMT, there are two other "parties that have [sic] or may claim to be the owner" of the relevant documents. As we have already explained, a plaintiff must do more than allege a specter of double liability, and because that is all this new allegation does, it does not alter the conclusion that the amendment would be futile. JGMM's claim in this case is that it is unclear "to whom or to what entity [it] actually owes money." When faced with defendant's motion to dismiss or, alternatively, for summary judgment, it was JGMM's duty to adduce evidence or to bring in these additional parties, if necessary, to demonstrate that its double liability claim was something more than spectral. But JGMM conceded at oral argument on that motion that it had not discussed the matter with or even notified Lehman Brothers of its potential claim. And we have already found that JGMM failed to produce evidence supporting its claims. Neither did JGMM seek a stay of the motion for summary judgment in order to pursue further discovery, or seek to join other parties to the action. Rather, JGMM simply sought to amend its complaint, but the proposed amendment did not make the allegations necessary to state a plausible claim of double liability. The district court did not err in denying JGMM's motion to amend the complaint.

III.

For these reasons, we affirm the district court's judgment.