WOOLFITT v. HISTED.

1. TRUSTS—PASSIVE TRUSTS ABOLISHED—EXECUTED BY STATUTE OF
   USES.
   Passive trusts are abolished by statute in this State, but
   where a deed is so worded as to create a passive or naked
   trust, the statute on uses and trusts (3 Comp. Laws 1915,
   § 11565 et seq.) executes it by forthwith passing the title
   to the beneficiary.

2. SAME—TITLE REMAINS IN GRANTOR IF BENEFICIARY DEAD WHEN
   EXECUTED.
   If the beneficiary in a deed attempting to create a passive
   trust was dead at the time it was executed, said deed was
   void and the title remained in the grantor.

3. ESCHEATED ESTATES—PRESUMPTION OF DEATH.
   Under 1 Comp. Laws 1915, § 329, if any person shall dis-
   appear and his whereabouts remain unknown for the
   space of seven years, etc., he shall be presumed to be
   dead.

4. TRUSTS—DEEDS—CONSTRUCTION—INTENT.
   In a deed from a father to his son, the words designating
   him as "trustee for Katherine Smith of Chicago, Illinois,"
   held, to import an intent on the part of the grantor to
   invest her with some beneficial interest in the property
   conveyed.

5. SAME — WRITTEN ACKNOWLEDGMENT OF TRUST BY GRANTEE —
   FRAUDS, STATUTE OF.
   Written acknowledgment of said trust by the grantee sup-
   plements and confirms said deed, and satisfies the statute
   of frauds by the harmonious evidence in writing from
   both grantor and grantee of a passive or naked trust,
   which the statute executes by placing the legal estate
   in the beneficiary if then living.

Appeal from Bay; Houghton (Samuel G.), J. Sub-
mitted October 31, 1919. (Docket No. 114.) Decided
December 22, 1919. Rehearing denied April 10, 1920.

Bill by Amos J. Woolfitt against Charles D. Histed to quiet title to land. From a decree for plaintiff, defendant appeals. Affirmed.

*Victor Spike,* for plaintiff.

*Kinnane, Black & Leibrand,* for defendant.

STEERE, J.   Plaintiff sought by this bill and obtained a decree in the circuit court of Bay county, in chancery, quieting his claimed absolute title in fee to 40 acres of land in the township of Merritt, Bay county, described as the northwest quarter of the northeast quarter of section 30, town 13 north, of range 6 east. From that decree defendant appeals, claiming title to said land under a sheriff's deed issued to him on an execution in a suit he commenced by attachment against John B. Schabel of Tacoma, Washington, to whom defendant claimed said land belonged.

It was shown upon the hearing that for years prior to January 24, 1898, the 40 acres in question with other lands belonged to Balthaser Schabel, father of John B. Schabel, Rose Schabel-Weber, Josephine Schabel-Gerard and Katherine Schabel, the latter being the youngest. She gave birth to an illegitimate son on April 29, 1892, who died four years later. After his birth she left home and went to Chicago where her brother John found and took her back. She had assumed, or adopted, the name "Katherine Smith" and was thereafter so known and called by members of her family and others who knew and had occasion to refer to her. She left home again before the death of her child, and for over 20 years she has not been seen or heard of by any member of her family, or others, so far as shown, although efforts were made by the family through public officials and otherwise

to find her.   On January 24, 1898, some time after her disappearance and about two years after the death of her illegitimate child, her father, Balthaser Schabel, then a widower and well along in years, made conveyances dividing up his realty among his children, giving 90 acres to his son John B., 40 acres to his daughter Rose Weber, 40 acres to his daughter Josephine Gerard and by quit-claim deed conveyed the 40 acres in question to his son "John B. Schabel, trustee for Katherine Smith of Chicago, Illinois." This 40 acres was near but not adjacent to the 90 which he conveyed to John in his own right. This deed was in short form, for an expressed consideration of one dollar, and without words of inheritance except as supplied by statute.

Plaintiff's claim of title is based on a deed to him from John, as "trustee for Katherine Smith," dated May 23, 1916, and a deed from the father, Balthaser, dated June 10, 1916.

The sheriff's deed relied upon by defendant is dated July 1, 1918. For years following the conveyances of 1898, given by Balthaser to his children, John kept and controlled the 90 acres given to him and the 40 in question conveyed to him as trustee for Katherine. He lived upon the 90 acres for some time with his family, farming the whole 130 acres, afterwards renting the same to various tenants, and on April 30, 1910, rented the 130 acres to defendant Histed for a term of five years by a written lease containing covenants of quiet and peaceable enjoyment. In the meantime John had moved to the State of Washington, and being desirous of selling his farm authorized an agent at Bay City to do so with the suggestion that negotiations might be had with defendant, then in possession under the lease, to surrender the same. A deal was consummated by which plaintiff early in 1911 purchased the 90 acres of John, having the deed therefor

made to his son Emerson, from whom he took a life lease. Some negotiations were had between defendant, plaintiff, and Fisher, the agent of John, relative to defendant's surrendering his lease, the details of which we do not regard of controlling importance as no agreement was reached.

On May 1, 1911, plaintiff commenced in the name of his son Emerson eviction proceedings against defendant before a circuit court commissioner and the case went by appeal to the circuit court. While this and other litigation between the parties was pending in the circuit court defendant Histed commenced an action by attachment against John, who was in Washington, claiming damages for breach of the covenant in his lease for quiet and peaceable enjoyment, causing an attachment levy to be made on the 130 acres, consisting of both the 90 which John sold to Woolfitt and the 40 acres in question here, at that time still standing in the name of John as trustee of Katherine.

On December 2, 1911, an adjustment between these parties of their then litigation was made by which plaintiff agreed to and did pay defendant $550 in cash and surrendered to him a note of $375 previously given for rent, in consideration of a surrender of the lease upon the 90 acres and a release of the attachment levy against the same in defendant's action against John. It was, however, provided in the stipulation they entered into that—

"This agreement will not affect the right of action in said attachment suit of said Histed against said Schabel, except in so far as the consideration recovered in this settlement applies upon the damages of said Histed."

Histed thereafter pressed his attachment suit against John to a default judgment and made execution levy on the 40 acres standing in John's name as trustee, causing the same to be sold at sheriff's sale at which

he purchased the property, and secured the sheriff's deed under which he is defending.

While some effort is made in the briefs of counsel to argue the equities of the case we discover no appealing equities on either side. These parties were maneuvering at litigation length, as we view it, to get this 40 acres as cheaply as possible. So far as shown neither ventured in the project near the full value of the 40 which was assessed for $2,400 in 1915. The record does not disclose which, if either, of these parties was in possession of the property in dispute when this suit was begun, but defendant in his answer also asks as affirmative relief by way of cross-bill that his title to the 40 acres, claimed under his sheriff's deed, be quieted and he be declared the owner in fee simple of said described land. Although his default judgment under attachment proceedings against John B. Schabel was taken March 28, 1912, and the property sold on execution sale June 1, 1912, according to the sheriff's certificate, no deed was secured from that officer by defendant until nearly two years after plaintiff had received his deeds of the property from Balthaser and John B. Schabel, the sheriff's deed on execution sale being dated July 1, 1918, and acknowledged July 3, 1918.

We think this case turns primarily on legal questions. The controlling ones debated in the briefs of counsel are whether, according to the rules of construction and evidence which under our practice obtain in a chancery court, the conveyance from Balthaser Schabel to John B. Schabel, trustee for Katherine Smith, created a trust, and if so the kind and effect.

Plaintiff's contention is that the deed to John B. Schabel as trustee created a passive or naked trust which by operation of the statute immediately vested the legal title in Katherine if then living, or if she

was then dead the instrument was without legal effect and void, leaving the title in the father, Balthaser; that Katherine is presumed to be dead, not having been heard of for more than 20 years, and, if it be assumed she was living when the trust deed was given, Balthaser as her only heir subsequently inherited the title from her, which by his conveyance of June 10, 1916, passed to plaintiff.

Defendant contends that the words following the name of the grantee in the deed create no trust, are only *descriptio personæ,* and therefore vest an estate in fee simple in John B. Schabel under section 11751, 3 Comp. Laws 1915, which provides:

"It shall not be necessary to use the words 'heirs and assigns of the grantee' to create in the grantee an estate of inheritance; and if it be the intention of the grantor to convey any lesser estate, it shall be so expressed in the deed."

In connection with this, counsel for defendant make the somewhat extreme statement that "none of the rules of construction are applicable to statutory deeds," citing *Adams* v. *Fisher,* 143 Mich. 673, wherein the court held that the technical rule of construction that an *habendum* repugnant to the grant is void does not apply to deeds of statutory form, saying:

"The technical rule relied upon does not apply in construction of statutory deeds."

The court also said:

"A person unskilled in the law would probably have no difficulty in determining that the deed actually means what complainant alleges to be its legal meaning and effect."

In the instant case the suggestion is not far fetched that a person unskilled in the law would naturally and probably determine that a deed to John, "trustee for Katherine Smith, of Chicago," was intended to give

her some interest or estate in the property which he was to hold as her trustee, whatever might be the technical rule of construction as to words of description. In this case not only is the grantee designated as trustee but the beneficiary he is trustee for is named, which to any person of understanding whether skilled in the law or not would be much more significant than the bare descriptive word "trustee" without any suggestion as to who it was for. The deed was recorded on or about the time it was given and defendant had constructive if not actual notice of it and its contents when he attached the land in his action against John.

It is undisputed that the deed to John does not create an active trust. If a trust is created at all it is a naked or passive trust, which is defined to be "a trust in which the property is vested in one person upon trust for another, and the nature of the trust not being qualified by the settlor, is left to the construction of the law." Bispham Principles of Equity (7th Ed.), § 54. Passive trusts are abolished by statute in this State, but where a deed is so worded as to create a passive or naked trust our statute on uses and trusts (chapter 221, 3 Comp. Laws 1915) executes it by forthwith passing the title to the beneficiary. *Burdeno* v. *Amperse,* 14 Mich. 91 (90 Am. Dec. 225) ; *Ready* v. *Kearsley,* 14 Mich. 215; *Everts* v. *Everts,* 80 Mich. 222; *Rothschild* v. *Dickinson,* 169 Mich. 200. Those questions are now settled in this State past discussion. If this deed by fair intendment understandingly expressed a passive trust in John B. Schabel for Katherine Smith, his sister, she became the *cestui que trust,* plainly designated by name, and by force of the statute title passed to her when the deed was given in 1898, if then living. If she was then dead the deed was void and the title thereafter remained in her father until he conveyed the same to plaintiff. *Skinner* v.

*Grace Church,* 54 Mich. 543; *Paine* v. *Boynton,* 124
Mich. 194. Seven years from the time she disappeared
and her whereabouts remained unknown she was by
statutory provision presumed dead; 1 Comp. Laws
1915, § 329. Her father was then her only heir and
as such inherited the property.

Defendant's claim of title by execution sale under
his judgment against John is necessarily based on and
limited by the deed to John from his father, then of
record, designating him as "trustee for Katherine
Smith, of Chicago, Illinois." The natural meaning of
such words to a person of ordinary understanding im-
ports an intent on the part of the grantor to invest
her with some beneficial interest in the property con-
veyed. It implies more than the bare suggestion of
trusteeship for some possible unknown beneficiary. In
*Railroad Co.* v. *Durant,* 95 U. S. 576, where a party
was simply designated as "trustee" the court held it
sufficient evidence of a trusteeship to admit parol evi-
dence of its nature. But more in point, it was held in
*Boardman* v. *Willard,* 73 Iowa, 20 (34 N. W. 487),
that where a grantee named Woolston was designated
in a conveyance as "trustee" it sufficiently indicated
that he held title for an unnamed beneficiary, and he
having acknowledged the trust by a verified petition
asking for an injunction, an execution levy under a
judgment against him individually created no lien on
the interest of his *cestui que trust,* saying:

"This title being in Woolston, trustee, the judgment
was not a lien thereon, nor was one created by the
levy of the execution, for all the plaintiff obtained
thereby was a lien on the interest of Woolston. If
he had none the plaintiff got none."

In the instant case John Schabel distinctly acknowl-
edged the trust in writing both in identified letters
written by him and in signing his sworn testimony
taken in this case by deposition, in the State of Wash-

ington, which is explanatory and positive to that effect. In a letter of May 26, 1916, from Washington to plaintiff's counsel he wrote:

"As to my having any interest in the forty I have none excepting as trustee for Katherine Smith."

And on June 21, 1917:

"I only held this deed on the forty as trustee for my sister, and when father deeded it she was gone and he said he would deed it to me as trustee for her, and that was all the clame I had in it, and father wanted her to have it as her shair," etc.

Counsel for defendant objected to these letters as self-serving statements of the grantee, not a party to the suit, in effect and with only "the force of oral testimony," and also to John's deposition as in its nature but oral testimony, claiming all were incompetent because oral testimony cannot be resorted to for the purpose of creating a trust in real estate. That question is argued at length with many citations of authority in the briefs of counsel on both sides. It may be conceded that a trust in real estate cannot be created by parol, but where the writings are obscure it has been frequently held in chancery proceedings that oral evidence is admissible to explain the circumstances and make more certain the existence of a trust. As we view this issue, however, it is unnecessary to review the cases cited and arguments of counsel, or to go into that interesting and somewhat complicated subject upon which some of the authorities seem difficult to reconcile, for in this case we conclude there is written evidence of the essentials of a passive trust. In 1 Perry on Trusts (6th Ed.), § 82, it is said in part:

"* * * The statute of frauds will be satisfied if the trust can be manifested or proved by any subsequent acknowledgment by the trustee, as by an express declaration, or any memorandum to that effect, or by a letter under his hand, or by his answer in

chancery, or by his affidavit, or by a recital in a bond or deed, or by a pamphlet written by the trustees, or by an entry in a bank-deposit book; in short, by any writing in which the fiduciary relation between the parties and its terms can be clearly read. And if there is any competent written evidence that the person holding the legal title is only a trustee, that will open the door for the admission of parol evidence to explain the position of the parties.   *   *   *   Nor is it necessary that the letters, memoranda, or recitals should be addressed to the *cestui que trust*, or should have been intended when made to be evidence of the trust."

In quoting the above we do not lose sight of the fact that the grantee in the deed is not primarily the creator of the trust, but the grantor who conveys the property. In this deed conveying 40 acres of land for a consideration of one dollar, Balthaser Schabel designated his son John as trustee for his absent daughter, and John's sister, who is described in the deed by name and last known place of residence. Why was that done? He, at the same time by separate deed, conveyed to John for himself, not designating him otherwise than by name, a nearby 90 acres for a consideration of one dollar. It would be a strained, unnatural and narrow construction to say the contemporaneous deed to him as "trustee of Katherine Smith, of Chicago, Illinois" was intended for and meant nothing more than a description of John. We think by fair construction the language of the deed itself expresses and gives notice of an intended passive trust in John for a named beneficiary, sufficient, at least, to warn and put upon inquiry; while written acknowledgment of the trust by John supplements and confirms the same, and satisfies the statute of frauds by the harmonious evidence in writing from both grantor and grantee of a passive or naked trust, which the statute executes by placing the legal estate in the bene-

ficiary, if then living. She was in contemplation of law deceased at the time her father deeded the property to plaintiff in June, 1916, and in either aspect of the proposition he then had title.

The decree will stand affirmed, with costs.

BIRD, C. J., and MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred. SHARPE, J., did not sit.