**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0790n.06

No. 12-1953

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Aug 27, 2013*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ROBERT CARMACK, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Plaintiff - Appellant, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| v. | ) | |
| | ) | |
| THE BANK OF NEW YORK MELLON, As | ) | |
| Trustee for the Certificateholders CWALT, Inc., | ) | |
| Alternative Loan Trust 2005-J12 Mortgage | ) | |
| Pass-Through Certificates, Series 2005-J12; | ) | |
| COUNTRYWIDE HOME LOANS, INC.; BANK | ) | |
| OF AMERICA, NA, | ) | |
| | ) | |
| Defendants - Appellees. | ) | |
| | ) | |

BEFORE: GIBBONS and WHITE, Circuit Judges; GREER, District Judge.[*]

**HELENE N. WHITE, Circuit Judge.** Plaintiff Robert Carmack appeals the district court's dismissal of his action seeking to set aside the foreclosure sale of mortgaged property in Woodhaven, Michigan. Because Carmack failed to redeem the property within the statutory redemption period, Mich. Comp. Laws § 600.3240(8), and does not allege the clear fraud or irregularity in the foreclosure process that is required to challenge the foreclosure after the redemption period has expired, *Conlin v. Mortg. Elec. Registration Sys*., 714 F.3d 355, 359 60 (6th Cir. 2013), we AFFIRM.

---

[*]The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of Tennessee, sitting by designation.

## I.

## A.

In October 2001, Carmack obtained a mortgage loan from Countrywide Home Loans (Countrywide or Lender) to finance his purchase of property in Woodhaven, Michigan. He executed a promissory note in the amount of $348,000 and granted a mortgage against the property to Mortgage Electronic Registration Systems (MERS) in its capacity as "nominee for Lender and Lender's successors and assigns." The mortgage granted MERS, its successors and assigns the power of sale as to the property for the purpose of securing the loan's repayment. In January 2002, the mortgage was recorded with the Wayne County Register of Deeds.

Thereafter, the note was transferred to a securitized trust named CWALT, Inc. Alternative Loan Trust 2005-J12 Mortgage Pass-Through Certificates, Series 2005-J12 (the "CWALT Trust"), which is governed by a pooling and serving agreement. In October 2009, MERS, in its capacity as nominee for "Lender and Lender's successors and assigns," assigned the mortgage to The Bank of New York Mellon ("BNYM"), which accepted the mortgage in its role as trustee for the CWALT Trust. In November 2009, this assignment was recorded with the Wayne County Register of Deeds.

Meanwhile, Carmack defaulted on his loan payments. BNYM issued a notice of mortgage foreclosure sale by advertisement. On September 7, 2011, the property was sold at a sheriff's sale, at which BNYM purchased the property with a credit bid of $503,456.08. Later that month, the sheriff's deed was recorded with the Wayne County Register of Deeds.

**B.**

In March 2012, Carmack filed this action in Michigan state court against BNYM, as well as his original lender, Countrywide, and the loan servicer, Bank of America (collectively, Defendants). He asserted a wrongful foreclosure claim against BNYM, seeking a declaration that the assignment of the mortgage and sheriff's deed are void *ab initio*, as well as an order setting aside the foreclosure sale and vesting title in his favor.[1]  Defendants removed the case to federal court on diversity grounds.  In June 2012, the district court granted Defendants' motion to dismiss, concluding that, because Carmack failed to redeem his property within the statutory redemption period and his allegations do not fall within the clear showing of fraud or irregularity exception under Michigan law, he failed to allege a plausible claim that the foreclosure sale should be set aside.  *Carmack v. The Bank of N.Y. Mellon*, No. 12-cv-11669, 2012 WL 2389863 (E.D. Mich. June 25, 2012). Carmack timely appealed.

**II.**

**A.**

We review de novo the district court's dismissal of Carmack's complaint under Federal Rule of Civil Procedure 12(b)(6).  *Conlin*, 714 F.3d at 358.  The parties do not dispute that the district court properly determined that Michigan law applies in this diversity action.  "In resolving issues of Michigan law, we look to the final decisions of that state's highest court, and if there is no decision

---

[1] In addition to the wrongful foreclosure claim, Carmack alleged claims of conversion, slander of title, breach of contract, and quiet title.  However, because Carmack fails to raise any argument with respect to these other claims in his appellate brief, they are deemed abandoned. *See* Fed. R. App. P. 28(a)(5)&(9); *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 462 (6th Cir. 2003).

directly on point, then we must . . . determine how that court, if presented with the issue, would resolve it." *Id.* at 358 59. "In making this determination, intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *Id.* at 359 (internal quotation marks and alteration brackets omitted).

**B.**

"Non-judicial foreclosures, or foreclosures by advertisement, are governed by statute under Michigan law." *Conlin*, 714 F.3d at 359; *see* Mich. Comp. Laws § 600.3204; *Senters v. Ottawa Sav. Bank, FSB*, 503 N.W.2d 639, 641 (Mich. 1993). Carmack does not dispute that he had six months after the sheriff's sale in which to redeem the property. *See* Mich. Comp. Laws § 600.3240(8). "Once this statutory redemption period lapses, however, [his] 'right, title, and interest in and to the property' are extinguished." *Conlin*, 714 F.3d at 359 (quoting *Piotrowski v. State Land Office Bd.*, 4 N.W.2d 514, 517 (Mich. 1942), and citing Mich. Comp. Laws § 600.3236). "Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor has made 'a clear showing of fraud, or irregularity.'"[2] *Id.*

---

[2]Contrary to Carmack's argument, the district court did not dismiss this action on the basis that he lacked standing due to his failure to allege clear fraud or irregularity in the foreclosure process to excuse his failure to redeem within the statutory redemption period. The term "standing" does not appear in the district court's opinion. To the extent courts have referred to a plaintiff's failure to meet this redemption standard as one of standing, it is limited to standing under Michigan law, not Article III. *See Williams v. Pledged Prop. II, LLC*, 508 F. App'x 465, 467 & n.2 (6th Cir. 2012); *but see El-Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, 429 (6th Cir. 2013) (concluding that "[i]t is more accurate to say that the 'fraud or irregularity' claims . . . lacked sufficient merit to meet the high standard imposed by Michigan law on claims to set aside a foreclosure sale," rather than to say that the plaintiff lacked standing). In any event, "[w]hether the failure to make this showing is best classified as [a] standing issue or as a merits determination, one thing is clear: a plaintiff-mortgagor must meet this 'high standard' in order to have a foreclosure set

(quoting *Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969)). "It is further clear that not just any type of fraud will suffice. Rather, '[t]he misconduct must relate to the foreclosure procedure itself.'" *Id.* at 360 (alteration in original) (quoting *El-Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, 429 (6th Cir. 2013)). Here, "[a]s the six-month statutory redemption period has long since lapsed and the filing of a lawsuit is 'insufficient to toll the redemption period,' [Carmack] must make a clear showing of fraud or irregularity to maintain this action." *Id.* (quoting *Overton v. Mortg. Elec. Registration Sys.*, No. 284950, 2009 WL 1507342, at \*1 (Mich. Ct. App. May 28, 2009)).

## C.

In attempting to establish fraud or irregularity in the foreclosure process, Carmack argues that he may challenge the validity of the mortgage assignment to BNYM because his claims regarding the assignment's validity "go to the heart of whether Michigan's foreclosure by advertisement [procedure] was followed," namely whether BNYM held title to the mortgage as required by Mich. Comp. Laws § 600.3204(3) and whether it held an interest in the indebtedness as required by § 600.3204(1)(d).[3]

---

aside after the lapse of the statutory redemption period." *Conlin*, 714 F.3d at 359 60 (internal footnotes omitted).

[3]Section 600.3204(3) provides: "If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale [in a foreclosure by advertisement proceeding] . . . evidencing the assignment of the mortgage to the party foreclosing the mortgage." Section 600.3204(1)(d) provides that "a party may foreclose a mortgage by advertisement if . . . [it] is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage."

In an appeal challenging a foreclosure by advertisement, this court reasoned that the plain language of Mich. Comp. Laws § 600.3204(3) required only that the public record show that the mortgage had passed to the foreclosing party and that a record chain of title is not "destroyed by an irregularity affecting the validity of a transfer." *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 101 02 (6th Cir. 2010). The court further reasoned that "even if there were a flaw in the assignment, [the borrower did] not have standing to raise that flaw to challenge [the assignee]'s chain of title." *Id.* at 102. The court agreed with the district court's observation that "there is ample authority to support the proposition that a litigant who is not a party to an assignment lacks standing to challenge that assignment." *Id.* (internal quotation marks omitted); *cf. Bowles v. Oakman*, 225 N.W. 613, 614 (Mich. 1929) (holding that promissor could not challenge obligations under a note by asserting that an invalid assignment had occurred).

Carmack correctly notes that *Livonia*'s statement on standing should not be read broadly to preclude all borrowers from challenging the validity of mortgage assignments under Michigan law. As this court explained in *Livonia*:

> An obligor "may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void." 6A C.J.S. *Assignments* § 132 (2010). These defenses include nonassignability of the instrument, assignee's lack of title, and a prior revocation of the assignment, none of which are available in the current matter. *Id.* Obligors have standing to raise these claims because they cannot otherwise protect themselves from having to pay the same debt twice. *Id.*

*Livonia Props. Holdings, LLC*, 399 F. App'x at 102. The court then rejected the borrower's challenge to the assignment's validity:

> In this case, [the borrower] is not at risk of paying the debt twice, because [the assignee] has established that it holds the original note. [The assignee] has produced ample documentation that it was in possession of the note and had been assigned all rights therein prior to the initiation of foreclosure proceedings. The district court reviewed the copies in exhibits and the originals produced by [the assignee] and was satisfied that they were authentic. Without a genuine claim that [the assignee] is not the rightful owner of the loan and that [the borrower] might therefore be subject to double liability on its debt, [the borrower] cannot credibly claim to have standing to challenge the First Assignment.

*Id.* Further, the court stated that "a party subject to foreclosure has standing to challenge whether a lender holds record chain of title, but that determination is limited to an examination of the public records." *Id.* at 103. Citing *Livonia*, Michigan appellate courts have rejected challenges to mortgage assignments, but have recognized that such challenges may be permitted "under limited circumstances," ostensibly where the borrower has a valid claim that he will face double liability. *See, e.g.*, *Bank of N.Y. Mellon Trust Co., Nat'l Ass'n v. Monsivaes*, No. 310696, 2013 WL 2495045, at *3 n.4 (Mich. Ct. App. June 11, 2013); *Famatiga v. Mortg. Elec. Registration Sys.*, No. 304726, 2013 WL 1137186, at *2 (Mich. Ct. App. Mar. 19, 2013).

Under *Livonia*, Carmack's challenge to the mortgage assignment under § 600.3204(3)'s chain-of-title requirement is limited in scope, as the assignment was recorded with the Wayne County Register of Deeds and Carmack does not allege that any public record undermines the chain of title as recorded. Nevertheless, Carmack's challenge also implicates § 600.3204(1)(d)'s requirement that the foreclosing party own the indebtedness or an interest in the indebtedness secured by the mortgage or be the servicing agent of the mortgage. *Livonia* did not address this

7

requirement.  *See Talton v. BAC Home Loans Servicing LP*, 839 F. Supp. 2d 896, 906 07 (E.D. Mich. 2012) (distinguishing *Livonia* on this basis).[4]

Carmack, however, faces a significant hurdle in pressing his claims because a borrower raising a § 600.3204 defect must do more than rest his case on speculative, future harm.  He must establish prejudice (such as double liability) resulting from the foreclosing party's failure to adhere to the statute's requirements.  "Recently, in *Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329 (Mich. 2012), the Michigan Supreme Court made clear that failure to comply with the conditions set forth in Michigan's foreclosure-by-advertisement statute[, Mich. Comp. Laws § 600.3204,] does not render flawed foreclosures void (i.e., void *ab initio*) but merely voidable."  *Conlin*, 714 F.3d at 361 (internal citation altered).  To establish an actionable defect under § 600.3204, a plaintiff must show that he was prejudiced  i.e., he "must show that [he] would have been in a better position to

---

[4]The district court stated that Carmack "is not permitted, as he tries to do here, to challenge the capacity of the foreclosing mortgagee or to raise any other challenges except challenges to the foreclosure procedure," citing *Reid v. Rylander*, 270 Mich. 263 (1935).  *Carmack*, 2012 WL 2389863, at *2 3.  Defendants advance a similar argument on appeal, relying on *Reid*.  In *Reid*, the Michigan Supreme Court held that a former owner may holdover after foreclosure by advertisement and challenge the validity of the foreclosure in a summary eviction proceeding brought before a circuit court commissioner by the trustee under the mortgage to obtain possession of the property, but the former owner is limited to challenging the foreclosure procedure and cannot challenge "underlying equities, if any, bearing on the instrument, [or] legal capacity of the mortgagee or trustee[.]"  258 N.W. at 631.  This is because "[i]t is well established that the jurisdiction of a circuit court commissioner in summary proceedings is strictly statutory and such court is without authority to try title to land.  Nor does it have equitable jurisdiction." *Zak v. Gray*, 37 N.W.2d 550, 551 (Mich. 1949) (internal citations omitted).  The instant action, however, is not a summary proceeding in Michigan court.  *Reid*, therefore, does not limit this court's power to entertain Carmack's post-redemption collateral attack on the foreclosure process premised on BNYM's alleged failure to satisfy the requirements set forth in the foreclosure-by-advertisement statute, Mich. Comp. Laws § 600.3204.

preserve [his] interest in the property absent defendant's noncompliance with the statute." *Kim*, 825

N.W.2d at 337; *see Conlin*, 714 F.3d at 362 ("Post-*Kim*, Michigan mortgagors seeking to set aside

a sheriff's sale under § 600.3204 will have to demonstrate prejudice (e.g., double liability)[.]").

The *Kim* decision was issued in December 2012, after the district court's ruling in this case

and the filing of Carmack's appellate brief. In a supplemental brief, Carmack asserts that he should

be granted the opportunity to amend his complaint given this change in the law, to allow him to

allege "specific instances of prejudice." Nevertheless, we conclude that leave to amend would be

futile because Carmack's claims challenging the mortgage assignment, which are his grounds for

alleging fraud or irregularity in the foreclosure-by-advertisement process, are without merit.[5]

**D.**

**1.    Michigan's statute on uses and trusts**

Carmack first claims that the assignment of the mortgage to BNYM "as trustee for the

Certificateholders CWALT, Inc. Alternative Loan Trust 2005-J12 Mortgage Pass-Through

Certificates, Series 2005-J12" violated a provision of Michigan's statute on uses and trusts, Mich.

Comp. Laws § 555.5, which states:

> Every disposition of lands, whether by deed or devise, hereafter made, except as
> otherwise provided in this chapter, shall be directly to the person in whom the right
> to the possession and the profits shall be intended to be vested, and not to any other,
> to the use of, or in trust for, such person; and if made to 1 or more persons, in trust

---

[5]To the extent that Carmack asserts (without any developed argument) that the mortgage assignment was "forged" or "robosigned," these claims do not appear in his complaint. Nor did he seek leave to amend his complaint to add these claims. We therefore deem these claims waived. *See United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010); *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006).

for, or to the use of another, no estate or interest, legal or equitable, shall vest in the trustee.

Carmack contends that the CWALT Trust is a passive trust and therefore the assignment of mortgage to BNYM as trustee did not vest a security interest in BNYM. By virtue of Michigan's prohibition against passive trusts, Carmack contends that BNYM is not the valid mortgage holder and could not properly foreclose the mortgage under § 600.3204.

A passive trust "is defined to be a trust in which the property is vested in one person upon trust for another, and the nature of the trust, not being qualified by the settlor, is left to construction of the law." *Woolfitt v. Histed*, 175 N.W. 286, 288 (Mich. 1919) (internal quotation marks omitted); *see Cone v. Zelony*, No. 233034, 2003 WL 21995422, at *1 (Mich. Ct. App. Aug. 21, 2003) (explaining that a trust is passive when the trustee has no duties, and affirming a lower court's finding that trust was not passive where the trustee was "charged with holding title"); 1 John G. Cameron, Jr., Michigan Real Property Law: Principles and Commentary § 10.4 at 369 n.7 (3d ed. 2005) ("The trustee under a passive trust has no power of actual disposition and management, and no trust duties imposed on the trustee."). "Passive trusts are abolished by statute in [Michigan], but where a deed is so worded as to create a passive or naked trust, [the] statute on uses and trusts . . . executes it by forthwith passing the title to the beneficiary." *Woolfitt*, 175 N.W. at 288; *see Bays v. Charter Twp. of Waterford*, No. 237782, 2003 WL 1883463, at *2 (Mich. Ct. App. Apr. 15, 2003) (holding that a deed that conveyed property to a township "to be held in trust for the lot owners" vested legal title to the property in the beneficiaries, i.e., the lot owners, and not in the township).

According to Carmack, any transfer of the mortgage interest in his property vested that interest in the certificate holders of the CWALT Trust — not BNYM — by operation of § 555.5.

Section 555.5, however, concerns "disposition of lands, whether by deed or devise" rather than assignments of security interests. Further, as the district court correctly observed, the statute does not apply to a conveyance to an existing trust but rather pertains to a conveyance that purports to create a trust without any duties. *See Loring v. Palmer*, 118 U.S. 321, 343 44 (1886) (holding that the statute does not apply to a trust not created in the deed itself but by an independent instrument); *cf. Woolfitt*, 175 N.W. at 288. Here, neither the mortgage assignment nor the sheriff's deed created a passive trust. Rather, the assignment was conveyed to BNYM as trustee for the already existing CWALT Trust, with relationships and duties set forth in the trust's pooling and servicing agreement.

Carmack argues that even if § 555.5 applies only to a passive trust created by the deed itself, the mortgage assignment and the deed in this case created a new trust in favor of the certificate holders because BNYM "took the mortgage and then the subject property by [s]heriff's [d]eed as trustee for the *certificate holders* of the Trust and not in its capacity as trustee for the Trust itself." This allegation, however, contradicts Carmack's complaint (alleging that MERS assigned the mortgage to BNYM "as trustee for the trust") and was not raised below. Moreover, even if we were to overlook Carmack's failure to raise this allegation below, and even if § 555.5 applies to the mortgage assignment or sheriff's deed, the CWALT Trust is not passive. First, the trust's pooling and servicing agreement established BNYM as trustee of the CWALT Trust. Second, BNYM, as the trustee, is obliged under the terms of the trust's agreement to, among other duties, ensure that the

public records for the mortgage assignments are in proper form, retain possession and custody of each mortgage file, maintain a distribution account, and make periodic distributions to the certificate holders. Thus, the CWALT Trust is more properly classified as a permissible active trust. *See Hunt v. Hunt*, 83 N.W. 371, 372 73 (Mich. 1900) (holding that a trust is an "active trust" where the trustee is obligated to collect income from lands and pay the proceeds to the beneficiaries); *cf. Rishoi v. Deutsche Bank Nat'l Trust Co.*, No. 12-12957, 2013 WL 142258, at *4 (E.D. Mich. Jan. 11, 2013).

## 2. MERS's power to assign the mortgage to BNYM

Carmack claims that MERS lacked the authority to assign the mortgage to BNYM because it was never given authority to act as the "nominee" by the "current principal," i.e., the CWALT Trust. However, the mortgage terms belie this assertion, as the mortgage agreement conveyed to MERS (as nominee for Lender and Lender's successors and assigns), *and to MERS's successors and assigns*, the "power of sale" with respect to the property for the purpose of securing the loan's repayment, and the "right . . . to exercise any or all of those interests" conveyed by Carmack to Lender and its successors and assigns, including, but not limited to, the right to foreclose and sell the property. Thus, the agreement recognized that MERS had the power to assign the security interest and the power to foreclose. The Michigan Court of Appeals explained:

> Because plaintiff granted defendant MERS the power to assign the mortgage, the assignment of the mortgage to defendant Bank of New York Mellon was valid. Furthermore, because the mortgage specifically granted defendant MERS the power to foreclose on and sell the property as nominee for the lender, defendant Bank of New York Mellon, as assignee of the mortgage, also had the power to foreclose on and sell the property.

*Bakri v. Mortg. Elec. Registration Sys.*, No. 297962, 2011 WL 3476818, at *4 (Mich. Ct. App. Aug. 9, 2011), *abrogated on other grounds by Residential Funding Co. v. Saurman*, 805 N.W.2d 183 (Mich. 2011).

Although MERS did not own the note, the category of parties with an "interest in the indebtedness" under § 600.3204(1)(d) "include[s] mortgagees of record among the parties entitled to foreclose by advertisement[.]" *Saurman*, 805 N.W.2d at 184. MERS, as the mortgagee of record, had an interest in the indebtedness "i.e., the ownership of legal title to a security lien whose existence is wholly contingent on the satisfaction of the indebtedness" thus authorizing MERS to foreclose by advertisement. *Id.* at 183; *see Veal v. OneWest Bank*, No. 12-15695, 2013 WL 1747911, at *5 (E.D. Mich. Apr. 23, 2013) (explaining that *Saurman* "made clear that under Michigan law a mortgage granted to MERS as nominee for lender and lender's successors and assigns is a valid and assignable mortgage"); *Richard v. Schneiderman & Sherman, PC*, 824 N.W.2d 573, 574 (Mich. Ct. App. 2012) ("*Saurman* requires a holding that MERS was authorized to foreclose by advertisement [as the mortgagee of record]."). As a result, upon assigning its security interest to BNYM, MERS validly assigned to BNYM the authority to foreclose by advertisement as the mortgagee of record.[6]

### III.

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[6]Our decision addressing the merits of Carmack's claims should not be construed to mean that any purported defect in a mortgage assignment rises to the level of fraud or irregularity required to set aside a foreclosure sale after the redemption period has expired. Rather, because Carmack's underlying claims lack merit, there can be no question that he has failed to meet the high standard imposed by Michigan law for this lawsuit.