**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0481n.06

Case No. 16-2535

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 17, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| AMERICAN BIOCARE INC.; JIRA HOLDINGS LLC; KJJ HOLDINGS, LLC; HEALTH CARE PARTNERS, INC.; SOUTHWEST HOME HEALTH CARE HOLDINGS, LLC; SWHHC MANAGEMENT-CENTRAL TEXAS, LLC; SOUTHWEST HOME HEALTH CARE CENTRAL TEXAS LP; SOUTHWEST HOME HEALTH CARE OF HARRIS, LLC; SOUTHWEST HOME HEALTH CARE OF EAST TEXAS; SOUTHWEST HOME HEALTH CARE OF DALLAS, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) ) | |
| HOWARD & HOWARD ATTORNEYS PLLC; JIRA LLC; JIRA III, LLC; REDEMPTION HEALTH CARE LLC; SHHC SERVICES TX, LLC, | ) ) ) ) ) | |
| Defendants-Appellees. | ) | |

BEFORE: MOORE, GILMAN, and COOK, Circuit Judges.

COOK, Circuit Judge. The plaintiff companies allege that the defendants and other non-parties to the suit engaged in a Racketeer Influenced and Corrupt Organizations ("RICO") Act enterprise that "looted" the plaintiffs' assets and value. The district court disagreed, dismissing

several plaintiffs under Federal Rule of Civil Procedure 12(b)(1) and then dismissing the complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs appeal both decisions. We AFFIRM.

## I. Background Facts

### A. *The Original Acquisition*

American BioCare, Inc. ("ABI"), is a holding company that specializes in purchasing and managing home healthcare companies ("HHCs"). In December 2011, three of ABI's subsidiaries—JIRA Holdings, LLC; KJJ Holdings, LLC; and Healthcare Partners, Inc.— acquired a set of HHCs from businessman Kevin Ruark, his son Jamin Ruark, and their business partner Jason Laing (collectively, the "Ruark Individuals"). The subsidiaries partially financed the acquisition with a $3.9 million loan from FirstMerit Bank ("FirstMerit").[1] Although not a named borrower, ABI pledged as collateral its ownership stakes in its subsidiaries and the acquired HHCs (collectively, "ABI Entities" or "Entities"), along with the assets of those Entities, to guarantee the loan.

As part of the deal, the Ruark Individuals agreed not to work for or own any competing HHCs. But ABI alleges that the Ruark Individuals immediately violated the non-compete agreement by forming companies to acquire or partner with other HHCs. In April 2013, ABI sued the Ruark Individuals in Oakland County Circuit Court, which issued a stipulated status quo order requiring the Ruark Individuals to abstain from purchasing or managing HHCs in certain states.

---

[1] The bank was originally Citizens Bank until FirstMerit acquired it in 2013. We use "FirstMerit" to refer to both Citizens Bank and FirstMerit.

B. *Loan Default and Foreclosure Sale*

In October 2013, the ABI subsidiaries defaulted on their FirstMerit loan. ABI blames the default on the machinations of Vicki Welty and Tina Griffith (collectively, the "Back Office Managers"), alleging that the pair caused the default by "delaying and/or failing to produce timely and accurate financial reporting that was required by Plaintiffs' investors and lenders."

As a result of the default, FirstMerit initiated foreclosure proceedings to sell off the collateral (i.e., the ABI Entities' assets and ABI's ownership interest in the Entities). Two bidders stepped forward: Peachtree Equity Partners and the Ruark Individuals. FirstMerit accepted the latter's bid and then conducted a private foreclosure sale that transferred the collateral to three companies (JIRA LLC; JIRA III, LLC; and SHHC Services TX, LLC) owned by the Ruark Individuals. Shortly after the sale, all three entities assigned the assets and membership interests to Redemption Health Care, LLC ("Redemption"), a company owned by Jason Laing.

ABI alleges that during the collateral-sale negotiations, the Ruark Individuals' lawyer, Brandon Booth of the firm Howard & Howard Attorneys PLLC ("H&H"), misrepresented to FirstMerit that selling to the Ruark Individuals would not violate any existing court order. According to ABI, the foreclosure sale directly contravened the status quo order requiring the Ruark Individuals to refrain from owning or operating HHCs. The Oakland County Circuit Court agreed, holding the Ruark Individuals in contempt for disobeying the order.

C. *The Alleged CHC Fraud*

Knowing that it would have to prove a second predicate act (as required under RICO, *see infra* Section III, A), ABI alleges that the Ruark Individuals and H&H also perpetrated a second fraud, this one against Contemporary Health Care Fund I, L.P. ("CHC"). Specifically, ABI

claims that the Ruark Individuals misrepresented their ownership of certain assets in order to forestall foreclosure of a $4 million loan they received from CHC. ABI concedes that the alleged CHC fraud did not directly affect or otherwise injure ABI.

### D. Procedural History

ABI sued JIRA LLC; JIRA III, LLC; SHHC Services TX, LLC; Redemption (collectively, the "JIRA Defendants"); and H&H in federal district court, arguing that the defendants violated and conspired to violate RICO (specifically, 18 U.S.C. §§ 1962(c), 1962(d), and 1964(c)), as well as other state laws. In an amended complaint, it later added the ABI Entities as plaintiffs.

The JIRA Defendants moved to dismiss the ABI Entities under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), alleging that ABI lacked standing to sue on behalf of the Entities and had not alleged sufficient facts to state a RICO claim. H&H also moved for dismissal under Rule 12(b)(6).

The district court dismissed the ABI Entities from the suit, determining that because ABI no longer owned an interest in the Entities after the FirstMerit foreclosure, ABI lacked standing to sue on the Entities' behalf. The court also dismissed the suit against the JIRA Defendants because ABI failed to allege facts with particularity—as required under Federal Rule of Civil Procedure 9(b)—to demonstrate that the JIRA Defendants were involved in any act of fraud underlying the RICO claim. As for H&H's motion to dismiss, the court found that ABI failed to show (i) any harm from the alleged CHC fraud or (ii) that the misrepresentations to FirstMerit proximately caused ABI to lose its assets. It therefore dismissed the RICO, RICO-conspiracy, and state-law claims against H&H. ABI timely appeals only the dismissal of its RICO and RICO-conspiracy claims.

## II. ABI's Standing to Sue on the ABI Entities' Behalf

"We normally review de novo the district court's decision to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Howard v. Whitbeck*, 382 F.3d 633, 636 (6th Cir. 2004) (citing *Cob Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc.*, 362 F.3d 877, 880 (6th Cir. 2004)). But when a defendant challenges subject matter jurisdiction by attacking the underlying jurisdictional facts, this court reviews the district court's factual findings for clear error and its application of the law to the facts de novo. *Lovely v. United States*, 570 F.3d 778, 781–82 (6th Cir. 2009) (citations omitted). "Under the clear-error standard, we abide by the court's findings of fact unless the record leaves us with the definite and firm conviction that a mistake has been committed." *United States v. Yancy*, 725 F.3d 596, 598 (6th Cir. 2013) (quoting *United States v. Gardner*, 649 F.3d 437, 442 (6th Cir. 2011)) (internal quotation marks and alterations omitted).

Although the ABI Entities' current owners—the JIRA Defendants—did not authorize the ABI Entities to sue (and in fact sought to dismiss the Entities from the suit), ABI listed the Entities as plaintiffs in its amended complaint. ABI makes two arguments to justify its ability to sue on behalf of the ABI Entities. First, it asserts that the district court should have decided the standing issue under Rule 12(b)(6)—a more favorable standard to ABI—rather than under Rule 12(b)(1). Second, ABI contends that even under Rule 12(b)(1), it retained a possessory interest in the ABI Entities—and accordingly, its standing to sue on their behalf—because JIRA, JIRA III, and SHHC Services-Texas purchased the ABI Entities in bad faith.

A. *Whether the district court properly decided the issue of standing under Rule 12(b)(1) rather than Rule 12(b)(6)*

Article III standing is a question of subject matter jurisdiction properly decided under 12(b)(1). *See Allstate Ins. Co. v. Glob. Med. Billing, Inc.*, 520 F. App'x 409, 410–11 (6th Cir.

2013) (citations omitted). Because the JIRA Defendants challenge subject matter jurisdiction, ABI has the burden of proof to show that subject matter jurisdiction exists. *Giesse v. Sec'y of Dep't of Health & Human Servs.*, 522 F.3d 697, 702 (6th Cir. 2008).

ABI rests its entire argument for Rule 12(b)(6) review on one unpublished district court opinion: *Block v. BAC Home Loans Servicing LP*, No. 11-11181, 2012 WL 2031640 (E.D. Mich. June 6, 2012). In *Block*, the plaintiffs sued to regain possession of their foreclosed home. *Id.* at *1–2. The defendants moved to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, arguing that the plaintiffs did not have standing to sue because they failed to repurchase the house during the statutory redemption period. *Id.* at *2. The district court held that the term "standing" was "a misnomer" because the "plaintiff[s'] failure to assert a claim during the redemption period is an issue that goes to the claim's merits." *Id.* The court therefore rejected addressing the "standing" issue under Rule 12(b)(1) in favor of addressing it under Rule 12(b)(6). *Id.* at *2–3.

ABI analogizes this case to *Block*, arguing that "whether . . . ABI had standing to pursue claims on behalf of the [ABI Entities] is a legal issue that went directly to the merits of Plaintiffs' claim for declaratory judgment regarding the ownership interests in the [ABI Entities]."

ABI misreads *Block*. The *Block* court's statement that "standing" was "a misnomer" refers to a conflation of two different usages of the term "standing": standing under Article III of the U.S. Constitution and statutory "standing" under Michigan's mortgage-foreclosure laws. *See El-Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, 427–30 (6th Cir. 2013); *Block*, 2012 WL 2031640, at *2. The former, of course, involves whether a plaintiff has satisfied the requirements of "concrete, particularized, and actual injury that is fairly traceable to the challenged action of the defendant[] and capable of being redressed by a favorable decision," as

well as any applicable principles of prudential standing. *El-Seblani*, 510 F. App'x at 427–30 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). The latter deals with whether a plaintiff who fails to repurchase her home during the redemption period set out in Michigan Comp. Laws § 600.3240(8) can bring suit—a merits issue governed by Michigan's foreclosure laws. *Id.* at 428–29; *see Carmack v. Bank of N.Y. Mellon*, 534 F. App'x 508, 510 & n.2 (6th Cir. 2013) (citing *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013)). The "standing" discussed in *Block* is the Michigan-foreclosure-law variety, *see* 2012 WL 2031640, at *2–3, which is not germane to whether ABI has Article III standing to sue on the ABI Entities' behalf.

B. *Whether the district court properly dismissed the ABI Entities under Rule 12(b)(1)*

ABI argues that even under Rule 12(b)(1), it has standing to sue in the name of the ABI Entities. Its argument relies on two assertions: it retains ownership rights over the ABI Entities and those rights suffice to confer standing to sue on the Entities' behalf.

To start, the district court made multiple findings of fact about ABI's ownership rights. First, it found that ABI no longer holds a possessory interest in the ABI Entities because FirstMerit foreclosed on ABI's ownership stake. Second, the court found that the JIRA Defendants who participated in the sale did not act in bad faith—i.e., the JIRA Defendants did not collude with FirstMerit or have knowledge of defects in the foreclosure sale when obtaining the ABI Entities and assets. Third, the court credited Jason Laing's affidavit, which stated that the JIRA Defendants not only refused to authorize the suit but also sought dismissal of the Entities.

ABI acknowledges that a foreclosure sale occurred, but replies that it nevertheless retains a possessory interest in the Entities because the Ruark Individuals violated the good-faith

requirement when they lied to FirstMerit about the existence of a court order barring the Individuals from owning any HHCs. *See* Mich. Comp. Laws § 440.9617(2)–(3). Michigan law holds that where a party to a foreclosure sale acts in bad faith, the purchaser (i.e., the JIRA Defendants) takes the "collateral subject to . . . [t]he debtor's [(i.e., ABI's)] rights in the collateral." *Id.* § 440.9617(3).

The commentary to § 440.9617 explains that collusion and notice of defects are two nonexclusive examples of acting in bad faith. *See id.* § 440.9617 n.3 (noting knowledge of defects or buying in collusion "as specific examples of the absence of good faith"). Arguably then, lying about the court order could constitute an act of bad faith—especially given FirstMerit's alleged statement that it would not have sold the ownership interests and the ABI Entities' assets to the JIRA Defendants had it known that the sale would violate such an order.

But we need not address the issue because, even assuming that ABI retains ownership in the ABI Entities, it still lacked standing to sue in their names. "As a general rule, two separate corporations are regarded as distinct legal entities even if the stock of one is owned wholly or partly by the other." 1 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Corporations* § 43 (perm. ed., rev. vol. 2016); *see also Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("The properties of two corporations are distinct, though the same shareholders own or control both. A holding corporation does not own the subsidiary's property.") (quoting 1 Fletcher § 31). As a company distinct from the Entities, ABI "generally must assert [its] own legal rights and interests, and cannot rest [its] claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see also Sec. Indus. & Fin. Mkts. Ass'n v. U.S. Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 406 (D.D.C. 2014) ("[T]he shareholder standing rule generally precludes a parent corporation—indeed, any sole

shareholder—from having standing to bring an action on behalf of its subsidiary.") (citations omitted). ABI therefore cannot enforce the rights of the ABI Entities merely by owning the ABI Entities. Nor does ABI present any legal theory in its complaint suggesting that it has a particular relationship with the ABI Entities allowing it to act on the Entities' behalf. Finally, dismissing the ABI Entities does not preclude ABI from pursuing claims based on harms— including loss of its ownership interests—that it might have suffered from the alleged RICO enterprise. We therefore affirm the district court on this issue.

### III.  RICO and RICO-conspiracy claims

"We review de novo a district court's dismissal of a plaintiff's complaint for failure to state a claim under Rule 12(b)(6)." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (citing *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 451 (6th Cir. 2003)).

### A.  RICO: The Predicate Offenses

ABI brings a civil RICO claim for a violation of 18 U.S.C. § 1962(c) and seeks recovery for injury to its business under 18 U.S.C. § 1964(c). A plaintiff seeking to recover under § 1964(c) must meet two requirements. First, he must prove the elements of an underlying RICO violation: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 483 (6th Cir. 2013) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006)); *see* 18 U.S.C. § 1962(c). Second, the "plaintiff[] must show that the RICO violation was the proximate cause of the injury to [his] business or property." *In re ClassicStar*, 727 F.3d at 484. (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).

To establish a "pattern of racketeering activity," ABI must show that the defendants committed at least two predicate offenses. 18 U.S.C. § 1961(5); *Sedima, S.P.R.L. v. Imrex Co.*,

473 U.S. 479, 496 n.14 (1985). Because ABI claims that the two racketeering activities alleged here—the CHC loan fraud and the FirstMerit foreclosure-sale fraud—both resulted from wire, mail, or bank fraud (18 U.S.C. §§ 1343, 1341, and 1344, respectively), ABI "must state with particularity the circumstances constituting [such] fraud." *See* Fed. R. Civ. P. 9(b). At a minimum, ABI must "allege the time, place, and content of the alleged misrepresentation on which [it] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Heinrich v. Waiting Angels Adoption Servs. Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *United States ex rel. Bledsoe v. Cmty. Healthy Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)) (internal quotation marks omitted); *see also Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) ("[T]he plaintiff [must] state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." (internal quotation marks and citation omitted)).

Despite its 76 pages, ABI's complaint lacks sufficient facts to meet this standard. We focus first on the alleged FirstMerit foreclosure-sale fraud. The only paragraphs describing the alleged misrepresentations to FirstMerit state that:

> 144. Prior to November 7, 2013, to induce First Merit [sic] to enter into the sale, the Ruark Individuals (most specifically, Jason Laing) and Howard & Howard (by its partner, attorney Brandon Booth) expressly represented to First Merit [sic] that the transaction would not violate any agreements or court orders bound or applied to the purchasers.

> 145. On Thursday, September 4, 2014 via telephone, counsel for First Merit [sic] Bank, Donald F. Baty ("Baty") told ABI's counsel that Howard & Howard attorney Brandon Booth expressly represented to him that the asset foreclosure sale would not violate *any* court orders. Baty further stated that Booth's representation to Baty was the reason that a warranty and representation to that effect was expressly included in the sale agreements. Howard & Howard communicated its representations via telephone calls and emails.

Although the two paragraphs cobble together a few details, they fail to give even one date on which an alleged misrepresentation occurred. That alone dooms ABI's ability to allege fraud with particularity. *See Heinrich*, 668 F.3d at 393 (finding that a plaintiff failed to allege fraud with sufficient particularity because she "d[id] not include [in her affidavit] the date she received the allegedly fraudulent email from the defendants."); *see also United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504–05 (6th Cir. 2007) (holding that pleading was insufficient where the plaintiff failed to, among other things, set forth the dates of any fraudulent statements); *United States ex rel. Hirt v. Walgreen Co.*, 846 F.3d 879, 881 (6th Cir. 2017) (same).

The two dates provided in paragraphs 144 and 145 simply highlight the lack of specificity. The first—"[p]rior to November 7, 2013"—implies a general time frame, but does not pinpoint a particular day or time when a misrepresentation occurred. The second—September 4, 2014—is the date that FirstMerit's counsel *spoke to ABI* about the misrepresentations, not the date of the misrepresentations themselves; those allegedly happened at least ten months earlier, i.e., sometime before November 7, 2013.

Moreover, even when examining the jumble of details that ABI actually sets forth, we cannot discern a single, discrete instance of fraud related to the FirstMerit foreclosure. For example, despite claiming that emails and the sales agreement documented the misrepresentations, ABI fails to identify misleading language from or ascribe a date to either source. Additionally, ABI notes that H&H "expressly represented" to FirstMerit that "the asset foreclosure sale would not violate any court orders." Similarly, the complaint names Laing as one of the defrauders. But those two allegations bring us no closer to the particularity required under Rule 9(b), as neither ties an alleged misrepresentation, a medium of communication, a

time, and a perpetrator (whether that be the JIRA Defendants, Laing, or H&H) to a single occurrence of fraud.[2]

The complaint alleges only one other RICO predicate: the CHC fraud. Even assuming that ABI sufficiently pled this fraud, ABI's RICO claim fails for want of a second predicate act. *See* § 1961(5); *Sedima*, 473 U.S. at 496 n.14. We thus need not address ABI's remaining arguments regarding the RICO elements of proximate cause, conduct or participation, pattern of racketeering, and injury.

### B. RICO Conspiracy

To prove a conspiracy to violate RICO, a plaintiff must allege all the elements of a RICO action plus one additional element: "an illicit agreement to violate the substantive RICO provision." *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 806 (6th Cir. 2015) (quoting *Heinrich*, 668 F.3d at 411) (internal quotation mark omitted). Given that ABI cannot prove the underlying RICO violation, it follows that ABI cannot prove a RICO conspiracy.

## IV. Conclusion

For all of the above reasons, we AFFIRM.

---

[2] The district court dismissed the RICO claim against the JIRA Defendants under Rule 9(b), but dismissed the claim against H&H based on lack of proximate cause. Because we find the lack of particularity in alleging fraud applicable to H&H as well, we dismiss the RICO claim against H&H under Rule 9(b) rather than for lack of proximate cause. *Harris v. Nationwide Mut. Fire Ins. Co*, 832 F.3d 593, 596 (6th Cir. 2016) ("We may affirm dismissal 'on any supportable ground, even if the district court invoked other grounds for its ruling.'") (quoting *Ind. State Dist. Council of Laborers v. Omnicare, Inc.*, 583 F.3d 935, 942 (6th Cir. 2009)).